Day, J.
The questions involved in this case relate chiefly to the sufficiency of the bond to sustain the action brought thereon.
It is claimed to be defective, for the reason that it was approved by two trustees only, and that it does not appear to have been approved at a meeting of the trustees. The statute requires the “ bond to be approved by the trustees of the township.” S. & C. 764, sec. 11. It is averred in the petition that the bond was duly approved by two trustees of the township in which the justice of the peace was elected. It also appears upon the- bond to have been approved by the trustees, and the app'oval is attested or signed by two of them. It is not aver'ed, nor does it expressly appear, that this was done at a meeting of the trustees. But it is averred that the bond was approved by two of the trustees at the same time, and therefore, nothing appearing to the contrary, it may be presumed it was done at a meeting of the trustees, and that, thereupon, the bond was approved by those, at least, who signed the approval. Doughty v. Hope, 3 Denio, 253; McCoy v. Curtice, 9 Wend. 17; Downing v. Huger, 21 Wend. 178; Yates v. Russell, 17 Johns. 468.
The statute fixes the number of township trustees at three, and declares that “ a majority shall be a quorum to do business at all meetings of the trustees.” It was therefore held, in The State, ex rel. Cline, v. Wilkesville Township, 20 Ohio St. 238, that special meetings of boards of township trustees may be held without previous notice to all. the trustees; that a majority constitutes a quorum to do business at such meetings; and that a bond authorized by the statute to be issued by the trustees of the township, signed *320 by two of their number, was valid and binding against the-township.
The requirement, that the bond of a justice of the peace shall be “ approved by the trustees of the township,” must be construed with reference to the general provision constituting a majority a quorum to do business. We must,, then, upon the facts stated in the petition, hold that the-bond in suit was approved as required by law.
Moreover’, I think it doubtful (I may add) if a defective-approval of a justice’s bond by the trustees can be successfully urged in defense to a suit on the bond, where it has-been, as in this ease, in fact received and filed as the bond required by the statute. If the trustees do not approve the-bond, they may refuse to receive it, .and order a new election to fill the office, as, upon refusal or neglect to enter into the requisite bond, they are authorized to do by the-statute. The boud, signed by the parties, was sufficient to make them liable without an express approval; otherwise,, they who might be injured by the negligences of the justice, would be left -without security, merely through the neglect of the trustees to approve the bond in due-form. Neither the language nor policy of the statute renders the instrument void for want of such approval. To this effect was the holding in Skellinger v. Yenders, 12 Wend. 306, upon a question similar to that here presented. 33ut it is not necessary for us to go to that extent in this-case ; for, as already shown, the bond was sufficiently approved.
Again, it is claimed that the condition of the bond is-so defective that it can not be regarded valid as a statutory bond. The statute requires the person elected and commissioned as justice of the peace to enter into bond “ conditioned that he will well and truly do and perform every ministerial act that is enjoined upon him by law.” The condition of the bond in suit is, that the justice elect “shall well and truly discharge the duties of justice of the peace-according to law.” Is this condition sufficient to answer-the requirement of the statute? Though not literally, it *321 does in substance ; for it covers the stipulations required, being broad enough to secure the performance of every act contemplated by it. In legal effect, the general language of the condition covers only the ministerial acts of the justice of the peace, as required by the statute ; for no liability under it can relate to the discharge of his judicial duties. Creighton v. Harden, 10 Ohio St. 579; Allegany County v. Van Campen, 3 Wend. 49.
This view answers the objection that, as the condition contains no express stipulation for the performance of the ministerial duties of the justice, the letter of the bond does not bind the sureties. Undoubtedly sureties are liable only upon the words of their contract. But the language of the condition does embrace “ every ministerial act enjoined by law ” upon the justice of the peace: and the fact that it is broad enough in its terms to embrace other acts, for which he can not be held liable (as said in Skellinger v. Yenders, supra), “ does no harm.”
The question arises, though not made in argument, whether the case stated in the petition shows a breach of the bond through the failure of the justice to perform any “ ministerial act that is enjoined upon him by law,.”
The ground of complaint chiefly relied on is, that the justice of the peace issued an order of arrest in a civil action, without taking an undertaking as required by law. The 20th section of the act in relation to the duties of justices of the peace (S. & C. 774), provides that “an order for the arrest of the defendant iii a civil action shall be made by the justice of the peace before whom the same is brought, when there is filed in his office an affidavit” stating certain facts, and establishing one or more particulars specified in the statute. But the 22d section declares that “ the order of arrest shall not be issued by the justice of the peace until there has been executed by the plaintiff,” if a resident freeholder, or, if not, by his sureties, “ a written undertaking, to the effect, that the plaintiff shall pay the defendant all damages which he may sustain by reason of the arrest, if the order be wrongfully obtained,” etc.
*322 "Wole, then, the 20th section requires the order of arrest to be “ made ” by the justice on the filing of the affidavit, the 22d section, in effect, directs him to retain it until an undertaking is filed for the security of the defendant. This the justice did not do ; but he issued the writ without an undertaking having been executed — for this we understand to be the import of the averment in the petition, that he neglected and refused to require it.
If these are ministerial acts, undoubtedly the justice rendered himself personally liable to the party arrested, for the writ was issued against the express prohibition of the law. Briggs v. Wardwell, 10 Mass. 356. And if he is not liable on his bond, his willful negligence deprives the person injured by the wrongful arrest of any security for the damages he may sustain. This security the law contemplates that he shall have, either through the bond of the justice for a breach of his duty, or through the undertaking filed, when his duty is performed as required by law.
Clearly the justice of the peace did not “well and truly do and perform” the acts in the premises “enjoined upon him by law.” He x-efused to require an undertaking before issuiixg the order of arrest. He neglected to withhold it ■until one was filed. He issued the wx*it, not “ well and truly,” but wrongfully. If these were ministerial acts, he committed a breach of the law, upon which, in the language of the statute (S. & C. 765), “suit may be brought . . . by any person injured by the neglect or refusal of ■any such justice.” ’Wei'e they ministerial acts? A justice of the peace acts in both a judicial and a ministerial capacity. The manner of discharging his judicial duties is left to his own judgment; but, in general, the acts which he is required to perfoi’m in a particular way, and as to which he has no discretion about the manner of their performance, ax’e of a ministerial character. In regard to the issuing of an order of ax’rest, everything to be done is specifically defined by the statute. Nothing is left to the discretion of the justice; he must pi’oeeed in a specified manner. He *323 acts in the same capacity that he does in issuing an execution after judgment. All these acts are such as, in the Court of Common Pleas, are performed by the clerk of the court, and are not dependent on the exercise of judicial discretion; but are such as a party may demand to have done as of right. They are, therefore, ministerial acts. Briggs v. Wardwell, supra.
It follows that the Court of Common Pleas erred in sustaining the demurrer to the petition; the judgment must, therefore, be reversed, and the cause remanded for further proceedings.